May it please the Court, Counsel, my name is Shelby White, and today I represent Tanner Griggs. This is a civil rights case involving Officer Brewer's use of excessive force in arresting Mr. Griggs for a suspected DWI. It is our position that, based on Griggs' testimony and the video evidence, a reasonable and unnecessary. Yes, there are cases where a leg sweep was justified or a punch to a restrained suspect was justified, but those— Okay, well how about Pratt v. Harris County? They killed that guy, and the majority opinion, which is the law of our court, found for qualified immunity. Found qualified immunity, so we're bound by that. How can you distinguish that case? I think that, again, that goes back to the point that each case has a different set of circumstances, and Pratt is distinguishable. That's a hog tie. I'm mistaken that he died or not. Oh, yes, he was hog-tied. That's correct. Yeah, he died. Yeah. But what we have is a suspect who starts out, he's running around in circles, he's imitating a boxer, he claims that he's on fire, and officers started with verbal warnings, and that's one of the things that the Court noted, was we started with the verbal warnings, we escalated to violence, he escaped twice, including escaping after being handcuffed, and including escaping after being tased. In addition, he said he would comply, and then refused to comply, and if you look at the case in Griggs, what we have is a suspect who is outnumbered, outmanned, much smaller. Really, really drunk. Yes. I'm surprised this man could stand. It's impressive, actually, that he can stand, given how drunk he is. Yes, but he does, I mean, if you look at him for... And he's giving the officer a hard time from start to finish. I mean, I watch the tape, he's like, and what if I say no, and this and that, so it's not escalating quite in the same way as running around, running away, but the crime that he's actually being potentially charged with is a much more severe crime than Pratt. Pratt was failed to stop and identify. This guy's driving drunk at .27. I mean, that's a deadly offense. Yes, I would agree in terms of the qualification of the offense, but I think that you have to look at the way that Griggs was acting compared to the way that Pratt was acting. Griggs is... He was resisting arrest from the beginning, though. I'm sorry, what was... He was resisting arrest and resisting the police from the beginning. I would strongly disagree with that classification. I believe that if you look at the video, when he is performing the field sobriety test, he is compliant. Yes, he asks questions, and if you look at... Whenever they started to, I thought, I mean, whenever they start to, they said, no, you're drunk, and you start to handcuff him, he says, no, no, no. So that's when he threw him to the ground, isn't it? Yes, and the problem is that if you look at Griggs's version of the events, he's not saying no or pulling away because he's resisting. He says no because he wants to finish completing the test. He's in the middle of it, and he pulls because he's falling over. He's resisting. And I guess his... The problem probably for all of us is we're influenced by what we saw in that video. Yes. And so let me tell you what concerns me about what I saw on the video, because I think you complain about three different episodes in this whole sequence of events, but you complain about three different episodes where force was used. Is that right? Yes. And so your first complaint about the use of force has to do with... He's taking the field sobriety test standing on the one leg, and we all agreed, not very well, but he's standing on the one leg, and Officer Brewer says, put your hands behind your back. And his response is, no, no, I'm doing it, which I would take as refusing to obey the command of the officer who says, put your hands behind your back. And then when that happens, he, depending on your view, either lurches to the right, which may be the view of the officer, or he was falling to the right. And for me, with that camera view, I'm not sure which one, but he was drunk enough to be falling. So if he says all I was doing was falling, I can believe him, as drunk as he was. But what the officer hears is no, and then he sees a body going in the direction away from him. So why doesn't that justify his grabbing and putting him on the ground? So you're talking about what we've characterized as the leg sweep and the choke hold. And that first event, it doesn't qualify as excessive force, because you have to look at what was happening beforehand, which is you have a largely compliant suspect who is attempting to perform a DWI. So when he threw him on the ground, you're not complaining about that? No, we are complaining about that. That throw on the ground was the use of excessive force, because he kind of goes from one to ten, is our point, is you've got a largely compliant suspect who's doing what you ask him to do. You grab his arm.  When he says no to me, he's not doing what I'm asking. He's telling me no. If I'm the officer, I just gave him a command, and his response is no. Isn't that what he's saying? Yes. All right. And we've taken the position that a reasonable jury, looking at those facts, could take Griggs' point of view, which was, I said no, I want to finish the test. And that isn't the question. The question is whether the facts, taken in the light most favorable to the non-movement, support a reasonable officer construing that. Not whether anyone could imagine that maybe he's trying to comply, but he's just not balancing very well, or, you know, whatever. There's a lot of ways you could spin something. But what would a reasonable officer see with the no and then the movement? And then the takedown is on the grass. I mean, he didn't slam him onto the concrete. He took him down onto the grass. I thought he was actually relatively mild, given how much guff Griggs had given him before this moment. I thought actually he handled that pretty well. And you're saying that's excessive force. When this guy is drunk, I mean, he should be arrested, frankly. Yes, but I think what you have is what we call kind of passive resistance, which is saying no, and then this fall over, which is Brewer's version of the events is that he pulled away. He doesn't pull very far. But is that a reasonable inference from the facts for an officer to draw? And the answer is yes, and that's the problem. We're having to look at it from the officer's perspective. Not taking his version of the facts, but taking the officer's perspective on this set of facts. He can't know, and no one can ever really know what was in Griggs' head, probably including Griggs, who was so drunk he probably didn't remember. But anyway, he's swaying around, but the officer's thinking, here, I've got this drunk guy who could fairly quickly become a liability. I mean, you keep talking about he's smaller and all this stuff. He could fairly quickly become a liability. I think the point is, yes, he could become a liability, but he has not demonstrated anything up to this point to indicate he is. He's not... Okay, so the officer has to wait until the guy starts punching him? I mean, that's the problem, is you've got this very minute timing that we're dealing with, and you're trying to avoid it escalating as the officer. And so you're arresting this guy who deserves to be arrested. He's committed a crime that could have killed people, and then he takes him down into the grass. Okay, so why don't you move to the next step? Okay, so the next one is kind of, if we're going in sequential time, the punches while he's pinned to the ground. And I think this goes to, if you look at the video directly after the leg sweep, he punches him in the face two times before he ever even attempts to reach his arms for the handcuffs. And that, I think, is certainly indicative... Did he punch him in the face or the back of the head? I think they're... So he's on the ground, and so it's more the side of the head and the back of the head. Right here. Yes. On his back, so it's not a punch in the face. No, the sucker punch later is directly in the face, but the earlier punches while he's pinned on the ground are the side of the head, the back of the neck. I appreciate that you characterize it as a sucker punch, but let's talk about the episode on the ground. Your client admits that he was trying to get into a fetal position and protect himself. Is that essentially his accounting of what occurred on the ground? So what was he protecting himself from, an arrest? No, because if you look at the video, Brewer has already punched him twice before he even has to grab his arm. So that, if you read Greg's... But if I tell you to put your arms behind your back, if you put them back there, I don't have to grab them at all, do I? Well, I think the problem is after the leg sweep and the takedown, you don't fall with your hands back behind your back. Right. And so he falls, he's got his arms under him, and then he's punched in the face. And so then, that's where he says, you know, I was scared, I curled into a ball, and then, you know, more punches are coming, more punches are coming, and I don't... You know, he says in his testimony, when I hit the ground, I was already dazed. He's admittedly intoxicated. And so then to be punched repeatedly in the head, and he doesn't really quite know what's going on and is not... Now he's got someone sitting on top of him, and it's even harder for him to get his arms behind his back. Right. And how many seconds is this segment of alleged excessive force? So the... From the leg sweep to the takedown starts at minute 27 and goes to minute 28, and the leg sweep is probably the quickest part. So I would say almost a full minute of the video is kind of the punches to the head and attempting to grab his arms and put him in handcuffs. Okay. How many seconds are there between what you contend are the punches without direction and then the punches after directions? I'm not sure on the exact number of seconds, because he... Because to me, I mean, I watched the video. I wasn't looking at the timer. I probably should have been, but it seemed fairly quick, all of this. I mean, it wasn't some leisurely analysis like we're doing here. I mean, actually, this oral argument is going to take longer than really the alleged excessive force part. Quite a bit, okay, because the whole tape is long of the whole discussion that's going on while they're both standing up, but this whole area that we're focused on is not that long. And so you're asking us to, in essence, kind of Monday morning quarterback, it's a good analogy right now, Monday morning quarterback, this police officer who's in seconds dealing with this guy who's been pretty mouthy with him, let's say, then swayed in a way that he was concerned about. He's very drunk. He's on the ground or whatever. And so we're having to focus on a couple of seconds, really, because by the time we get to the end of this minute, I mean, clearly, Griggs knows what he's being asked to do. He's not really doing it. And I think that's part of the point. As you characterize it, it's some swaying and some kind of general being obnoxious and not quite asking, why do you want me to do that? Why should I do that? And the problem is that Brewer immediately responds with very aggressive force, the punches to the head before he even, when Griggs lands on the ground, immediate punches to the head. He went into a fetal position. Yes. And he was punching him in the head because he was in a fetal position and wouldn't stretch himself out so he could get his hands out from under him. Yes. And so if you watch the video, and we are kind of breaking it down second by second, but he's leg swept. He hits the ground. Griggs admits, I'm very dazed. I don't know what's going on. He is punched twice in the face within two seconds of hitting the ground. And then you see Brewer kind of lifts himself up off his back and starts reaching for his arms. And then, at that point, Griggs is curling into the fetal position and Brewer punches him more times to get his arms out from underneath him, allegedly. This is part of his pain compliance technique. Let me ask you this. So if we were to accept your viewpoint, we've got these three incidents, on one of the incidents but not two of the other incidents, how would we possibly try, how would you all in the district, I'm saying we, thinking of myself as the district judge, how would we possibly try this case? I mean, to narrow it down to like, okay, look at just these three seconds of punching and tell us what you think, ladies and gentlemen of the jury, did Officer Brewer use excessive force? Answer yes or no. I mean, how do we do this? I mean, I think it can be done. There is, it's going to be a bit trickier if we, you know, knock out, knock out the leg sweep, for example. But it's still, I mean, it is a continuous timeline and I think that's part of what the issue is. But it's not, I mean, it's not impossible. A jury is certainly capable. Is your theory a totality of the circumstances, it's excessive force? Or is it one individual incident that we have to isolate and out of everything that occurred and call that excessive force and hold him liable for that one violation? It's our contention that any one of the three would be excessive force. So, it's a totality of the circumstances? It is a totality of the circumstances in terms of the officer's perspective in am I justified in using force in this situation with a smaller suspect who is intoxicated, who is being largely compliant, who is not threatening, who is not attempting to run away, and who is not attempting to fight me. 2 a.m. in the morning? 2 a.m. in the morning? Yes. So, kind of times that the bars close, yes. Does your client have any physical injury as a result of his encounter with the police? Well, yes, he does. And I believe that's alleged in our petition. And then, moreover, I think Defendant Brewer has tried to allege that there was no injury, but there is nothing in the record to indicate the extent of the injury. There's no motions before the, there were no motions before the district court to dismiss on the basis of a lack of injury. And, moreover, the, this court most recently in the Irwin case says that it's not, it's not the extent of the injury. If you use excessive force, then by nature it is not a de minimis injury. Well, what was the injury? So, he's been, he's been punched in the face multiple times. I believe he's got facial damage, pain, pain and suffering. No permanent, no permanent damage. I'm not aware of any permanent damage. But, again, the record is not indicative as to that. But, I mean, it's your client. What's wrong with him? You don't know? I mean, he's been, he's pain and suffering. He's been punched in the face multiple times. He's been. Okay. Well, I don't, I mean, I don't know what that means. Was that for a day? Did he feel pain for a day? For ten minutes? I mean, he was drunk. Did he feel any pain, frankly? Yes. Yes, Your Honor, he did feel pain. And, I mean, he goes to the emergency room afterwards. It's also in the record. And so, he's been. Okay. And what did they find? The medical records are not before this court and were not before the district court in making its decision. The district court did not base its decision on an excessive injury or lack thereof. I've got a few minutes left. I don't know if you'd like to discuss the sucker puncher if you want. I can just kind of move into my conclusion. Well, you go ahead. It's your time. But you've got about 30 seconds. All right. So, the sucker punch, again, if we look at Griggs' version of the events, he's being walked to the car. And you can hear on the video, he asks Brewer, what's his name? And Brewer violently shoves him into the car. He kicks Brewer. Brewer's vest is, or chest is covered in a bulletproof vest. And you can see in Cruz's video, this kind of flailing kick doesn't even knock him backwards. And the issue we have with that sort of violence is you've got a restrained suspect who's in the back of the car who's not resisting, and you retaliate with violence. Do you think the officer is resisting? I mean, in this case, and if you look at some of our other cases that we cited to, the Warburg v. Hall case in particular. I'm sorry. I'm out of time. Would you like me to? Go ahead. Go ahead and finish. The Warburg v. Hall case in particular, where the officer shoved the suspect, the suspect shoved him back, and then the officer retaliated by punching him and tackling him. In that case, the Eighth Circuit held that although Mr. Warburg returned the officer's push, the severity of that reaction is a matter for the jury, which I think is similar to this case. A jury could conclude, for instance, that the push was de minimis or inconsequential, and so a reasonable officer, when faced with those circumstances, would have known that responding with punching was excessive or unreasonable force. Thank you, Ms. Wright. Thank you. Save some time for rebuttal. Mr. Hartzell, we'll hear from you. Thank you, Your Honor. May it please the Court. My name is Jeff Hartzell, and I represent Officer Charlie Brewer in this case. In footnote 6 of the case of Poole v. City of Shreveport, the Fifth Circuit said, Arrests are inherently dangerous and can escalate precipitously if the arrestee is not overcome immediately. And that's what Officer Brewer was doing in this case. He perceived resistance, and he reacted very quickly in each instance. When he took him down, he felt he heard the word no. He felt him move away. But why start punching him before he has a chance to get his hands behind him? I mean, you've just been taken down. You weren't expecting it. Let's say you're drunk. You weren't expecting it. You're taken down, and you're kind of on the ground going, OK, now what? And immediately he starts punching. How can you justify that? I'm not sure that happened. Immediately, according to Griggs' affidavit, once he hit the ground, he said he immediately put his hands underneath his arms. I don't know if the punches started right then, but everything did happen real quick. Four times they did tell him, or three times they told him, put your hands behind your back. And once they told him, keep your hands out. And Griggs admitted in his affidavit he immediately, when he hit the ground, put his arms under his chest. Not that they were held there because he couldn't get them out. He says he put them there. Twice, according to Griggs' own affidavit, the officers were able to pull out his arms, and he was able to pull them back under. That's all in Griggs' testimony. Well, I mean, I think that's why I was focusing on, I mean, we're dealing with essentially a minute that we now have 40 minutes to scrutinize. But in that minute, I agree, there is a portion at which he starts to resist. Now, I don't think there's much question about that. The question is, did he immediately resist once taken down or not? I think he did because he immediately put, according to Griggs' own affidavit, he immediately put his arms underneath his body. So he is immediately resisting as soon as he hits the ground, according to Griggs. Well, see, this goes back to Judge Adali's totality of circumstances. And I'm thinking, you know, I was a trial judge for a time, and I'm thinking, how do you try, if the only problem is those first couple of punches and everything else is okay, how do you even try that case? And yet, do we let the officer just have a few free punches just because it's hard to isolate those? Does that make any sense to you? I had never thought, Your Honor, I had never thought of that until you mentioned it. It's like, well, if just one of these things is excessive, how do you try the case? Because you're looking at the totality of the circumstances. I just started thinking about it right then when you mentioned it, Your Honor. I had never thought of it before then. I'm going, yeah, you're right. How are we going to do it? That's why all those trials are so hard. I just then thought of how to try it. Well, you beat me to it, Your Honor. I was like, yeah, how are you going to try it? Because it is the totality of the circumstances. How are you going to isolate each separate incident? But you did say, did he get a few free punches, and I don't think he did because he immediately, according to his own testimony, put his arms underneath. I mean, that's what Greg said. And there's really no discrepancy as to how many punches were thrown. I think Greg said there were six. According to the officer, he threw five. So there's really not much discrepancy there. He got one. Yeah, there's a one-punch discrepancy. I guess we could try that. I don't mean to make light of it. I mean, the fact is you don't – I don't think it's appropriate to let an officer commit excessive force because other aspects of the force were not excessive. I don't know how you try it, but I would say in each instance here that they're complaining of, the force was reasonable, his perceptions were reasonable. It doesn't have to be reasonable, by the way. It has to be unreasonable. Correct. And there's a difference. It has to be unreasonable, but I'm sitting here saying, I think you can go further than that. I think his actions were reasonable. Whatever the difference is, I'm not sure. What about the final punch, if you will? So he's in the car, he's thrown him in the car, he kicks him. How does the punch help get him under control? I don't understand putting leg irons on his legs, but I don't understand how punching him gets him out of control once he's kicked him. He stopped. I was about to say, it did stop.  Yes. I mean, they can say, well, he kicked him in the chest plate or whatever. I can remember wrestling my 5- and 6-year-old daughter and stuff. And I took a couple of kicks to the head, I mean, from a 5- or 6-year-old. I mean, the legs are dangerous. They kick you in the head, they can hurt you. But, counsel, again, we obviously all watched the video. And so when I see that part of the video, moving past the first two episodes of the use of force, he kicks him. I don't know whether or not he admits that it was an intentional kick. But he kicks him. But when he does that, you have a camera that shows that he's already in the back seat of the car. But he's not completely in the back seat of the car. What does that mean? His legs are still out of the car? Yes. He was lying on his left side, and according to Brewer, he said about three-quarters of him was in the car, and part of his legs and feet were still hanging out of the car. Is that correct? Yes. And so a punch in the face is designed to get his legs into the car? That's what that punch was about. Ultimately, that's what it was. But according to Brewer's testimony, he goes, he kicked me, he goes, I want to deliver one punch to the face to take the fight out of him. I want him to quit fighting. But didn't he have to climb into the car and get on top of him to deliver that punch? He jumped on top of him. Now, the other thing that helped do was get away from his legs. Now he's on top of his legs, and the legs aren't going to get him, so he delivers one punch, and that takes the fight out of him. Then he's stunned. He gets back in. He pushes his legs in, closes the door. It's over with. I mean, Brewer never uses gratuitous force, I don't think, in this situation. I mean, as soon as he's handcuffed on the ground, there's no more punches delivered. As soon as he quits kicking him, he doesn't come in and say, Dadgummit, I've had enough, and come in and just start, you know, throwing six punches to the face. No, he jumps on, and in one second, that's how quick he made the decision, delivers one punch to the face, stuns him, backs up, pushes his legs in, slams the door. It's over with. I mean, he's just trying to get him under control. He's trying to get him to quit resisting. And that's what Brewer is doing in this instance. I guess the difference between what you're telling me and what I seem to see is that it looked to me like he was already in the backseat of the car where the solution is close the door. Yeah, he wasn't already all in the back of the car, according to Brewer's testimony. He was about— Deny that? I don't remember Griggs talking about that, whether he was all in or not. Maybe he didn't know. Was there a screen between the driver of the car and the backseat? Your Honor, I'm not sure I believe there would be. That's just based on past experience. But in each segment that they complain about, especially at the start of the takedown, I believe that was reasonable. I mean, Griggs says he goes that Brewer told him he was under arrest. If you listen to the tape, Brewer tells Griggs, put your hand behind your back. And he's like, no, I'm still doing it. Well, no, actually you're not. Put your hands behind your back. And so he's still trying to do the test. Well, when he's told to put his hands behind his back, he ought to be obeying what the officer says. And then he yells, no, no. And then the officer goes, no, this guy's fixing to try to fight me or get away. So he takes him to the ground. And as Judge Haynes points out, he takes him into the grass. And this is all confirmed on talking about this is a reasonable perception by Officer Brewer. But at 2833 of that video, after Griggs is handcuffed and Officer Brewer is walking him back, you can hear Brewer telling, when I have you by your hands, you don't say no and you don't pull away from me. I mean, he's talking about what happened at the takedown. So, I mean, that confirms what his perception was. That's exactly what he was thinking. So, and I don't know if I made any sense there. The dash cam was running too, didn't it? Your Honor? The dash cam was running too, didn't it? You know, I don't think he's that smart. I don't think he knew that. I mean, that was an excited utterance. I mean, he's talking to him right then. His adrenaline's pumping. I don't think that's the case at all. I think what he said was exactly what he thought was happening then, and I think that was a reasonable perception. Your Honor, the questions really aren't dealing with people's hearts. We're dealing with what would be reasonable or not unreasonable. Correct, correct. Not objectively unreasonable. Correct. And I'm just trying to bolster it. It was a reasonable perception, and I'm just going, that really was his perception. You can tell that by what he said as he's walking him back to the car. So, I think the takedown was reasonable. What did he say walking back to the car? Walking back to the car, Officer Brewer told Griggs, he goes, when I have you by your hands, you don't say no and you don't pull them away from you, which is talking about what happened at the initial takedown. I mean, Officer Brewer's dealing with a very intoxicated individual. I mean, speaking just for me, I don't have a problem with the original takedown. I think the punches on the ground and then the sucker punch in the car, the harder, however you want to characterize it, the punch in the car, are the harder ones to address. I think, frankly, he waited too long to arrest this guy. I mean, it's pretty clear to me that he was pretty drunk and just should have arrested him. He was actually trying to help him by doing, I think, probably there's some requirement to do this field sobriety test. He's trying to do the field sobriety test, and that's when things kind of go awry, it seems to me. I have no problem with the punches on the ground whatsoever because Griggs admitted he is physically resisting at that point. You compare this to the pool case. When, though? I mean, your counsel opposite is saying that he didn't really give him a chance. You're saying immediately he goes to the fetal position. That's what Griggs said. That's what he said. He says, I immediately put my arms underneath. That's his own testimony. And if you look at the pool case, in the Pool v. City of Shreveport case, the man that is stopped is, one, he's not even intoxicated. They determined he wasn't intoxicated. And when they go to arrest him, he just takes a step back and says, wait a minute, guys, what are you doing? And then they go and grab him. They fight with him. They end up using the taser in drive-stun mode. These guys never resorted to a taser or any batons or anything like that. They broke his arm in pool. In pool? Yeah, they did. They did. And that was an excessive force. I mean, if that wasn't excessive, and I pretty much relied on the pool case at the trial court. It's like, look, if that's not excessive force, this isn't excessive force. And that was pretty much my argument to the trial court. And I still believe that. As far as the punch to the face, could there have been other ways to have done that? Qualified immunity here is at issue, right? Qualified immunity is at issue here. Yes, yes it is. And so if you had, it's got to be clearly established that this was objectively unreasonable. Correct. And if in pool, as you say, it was not objectively unreasonable. Correct. Not clearly established that the conduct here was objectively unreasonable. That's correct, Your Honor. If pool is good, then this would have been good as well. Pool is good. It's on books. It has to be good. Yes. As far as the punch to the face, like I said, could there have been other ways to do it? Possibly. But he made that decision in one second. If you look at the timer, he got kicked. In fact, he's walking back there, and you can hear very faintly, you have to listen real close, Brewer says, have a seat. And then the guy starts to question him. And you can tell Brewer's a little, he goes, have a seat, pushes him in the car, and that's when he lands on his side, and that's when he kicks him. And that's in one second. And he comes in, delivers one punch, stuns him, puts his legs in the car, and it's over with. It just seems to me that it's unreasonable, objectively unreasonable, except in dire circumstances to punch somebody in the face. I don't know. I mean, I guess they justify that by saying that the pain, the quickness of the pain, brings them out of control. And that's what he was trying to do. I mean, he wasn't by himself. No, and remember, he only hit that one punch to the face after he was kicked. So that was just in response to the kick. Yeah, but he shouldn't, in other words, there had to be a law enforcement, a valid law enforcement reason to hit him in the face, not just retaliation. Correct. And he said, he goes, I'm not retaliating. What I'm trying to do is get him under control. I'm trying to take the fight out of him. And that's exactly what happened. There was never any other problems after that. How many times did he punch him in the back of the head or in the face when he had him on the ground? Five according to Brewer, six according to Griggs. And did he punch him in the face at all or just in the back of the head? According to Griggs, it was in the back of the neck or the back of the head. Was there any evidence that it was on his face? Brewer testified that twice he hit him on the side of the face while he was on the ground. That's in Griggs' testimony. That's what Brewer said. So there was some discrepancy. But if he's on the ground like this, probably to the face, I'm going to guess, is something more like this to the side of the face, not to the front. Right. I mean, it's not going to be right to the front of the face like the last punch was. But that's all I have, Your Honor, unless you all have some more questions. Thank you very much. Thank you. Mr. White, you have some time for rebuttal. May it please the Court. First, I'd like to talk about the Poole v. City of Shreveport case, and I think that case is distinguishable. First, you have a suspect who's thrown an unknown liquid at the police car that's following him. He raises his hands at one of the officers and invites the officer to hit him. Actually, he didn't throw an unknown liquid at the police car that was following him. There was a police officer in a private unmarked vehicle who was following him, and he threw liquid out the window at that car. Yes. But he's raised his hands at one of the officers, invited the officer to hit him. He's physically and verbally combative with the officers, and he actually actively attempts to and actually evades arrest at one point. And then I think what's important is that the court notes the response is escalated in response to each incident. So it doesn't start. They started out with verbal commands and warnings to finally escalate to physical restraint or use of force. And the problem we have here is that there is no escalation. It just jumps from one to ten. For example, if you look at the Brown v. Lynch case out of this court. You could look at it in a different way, though, couldn't you? You could say it was escalating. I mean, in other words, he resisted. He had him doing his test. Then from the officer's point of view, he resisted. No, no, no, I'm going to finish this test. I'm going to show you I can stumble around here for a while. And so the officer then throws him down. That's the next step. So the guy then puts his hands under there. Then it's the next step. Then he pulls them back, and he tries to get them in again. I mean, it's a matter of just escalating. And then finally, the second time that he puts them under himself, that's when he starts hitting him to get him to put his hands behind him. I think the problem is that if you look at every choice that Officer Brewer has made throughout the course of the arrest, he chooses violence over any other option. Not for the first, like, 20 minutes. Please don't do this. Yes, I think while performing the DWI, the field sobriety test, he's not doing anything, and Griggs is not doing anything. Well, but, I mean, Brewer is very, I thought, very patient with this guy giving him a lot of mouth and being very difficult, and the girlfriend's intervening, and there's a lot of this action going on, and I thought the officer was being very polite and whatever. And the problem that I have is your theory seems to be first this guy has to hurt the officer before the officer can hurt him, and that isn't the law. That isn't even the law without qualified immunity. No, I don't. But the whole idea of the officer is to avoid it getting to a place where this incredibly drunk guy who's been driving around drunk hurts anyone. Yes. We're trying to prevent that. He's already done something wrong, and we're trying to prevent it from getting worse. I think I would disagree with the qualification, though, that we're trying to say he has to hurt the officer first. I think what we're trying to say is you don't, the officer does not get to start a fight to then punch a suspect to end the fight. If you look at, for example, the Brown v. Lynch case, you have a suspect who matches the description of a drug dealer, and they admit he's belligerent and uncooperative. He yells at the officers. He curses at them. And then when they try and handcuff him, he's against the windows of a convenience store, places his hands on the burglar bars, and refuses to let them grab his hands. And in that case, the officer threw what he called a distraction strike to his face and punches him two more times until he releases the bar. In that case, this court said that that was striking an unresisting suspect is excessive and unreasonable. And so I think the problem here you have is if putting your hands on the bar is not considered, is not going to justify a punch to the face, why is sitting on top of your hands with someone else sitting on top of you going to be considered justification for five punches to the back of the head? The problem that we have here is we have Griggs is, as I mentioned, there's no warnings. There's no escalation. Any resistance he offers is inconsequential at best. He's unarmed. He's outmanned. He's outnumbered. And he's essentially defenseless, especially when you look at the sucker punch at the end when he's handcuffed. There's no indication. Well, he's not defenseless enough to not kick the officer. Yeah, but. Seriously? There's no indication. To kick an officer? I'm not saying that justifies the punch, but I wouldn't call that defenseless. That's fair. Because it is true, the legs are the most powerful. If you are trying to deal with somebody bigger than you, try to get it where you can use your legs against them, because absolutely that is much more powerful than trying to get in a fist fight, particularly when you're handcuffed. I think the problem is Brewer does not cite to, and there is no evidence in the record, and Brewer doesn't provide any evidence, that he thought Griggs was a flight risk or that he thought Griggs was capable of fighting him, and that every choice he's made is basically just pure retaliation. I think this ultimately is a case that needs to go to a jury because you can't look at these facts definitively and say as a matter of law, looking at Griggs' version of the events, the use of force was not unreasonable or it was not excessive force. I'd like to yield the rest of my time to the Court. Thank you. Thank you, ma'am. I appreciate your very good argument. We will go to the next case.